

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-15-2006

# USA v. Coleman

Precedential or Non-Precedential: Precedential

Docket No. 05-1348

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Coleman" (2006). *2006 Decisions.* Paper 794.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/794

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-1348
_____

UNITED STATES OF AMERICA

v.

EDWARD COLEMAN
a/k/a JOHN LONG,

Edward Coleman,
Appellant

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Action No. 04-cr-00097)
District Judge: Honorable Petrese B. Tucker

_____

Submitted Under Third Circuit LAR 34.1(a)
April 27, 2006

Before: AMBRO and FUENTES, <u>Circuit Judges,</u>
and IRENAS,[*] <u>District Judge</u>

(Opinion filed: June 15, 2006)

Robert Epstein
   Assistant Federal Defender
David L. McColgin
   Assistant Federal Defender
Maureen Kearney Rowley
   Chief Federal Defender
Federal Court Division
Defender Association of Philadelphia
601 Walnut Street
Suite 540 West - The Curtis Center
Independence Square West
Philadelphia, PA   19106-2414

    Counsel for Appellant

Patrick L. Meehan
   United States Attorney
Robert A. Zauzmer
   Assistant United States Attorney
   Chief of Appeals
Jose R. Arteaga
   Assistant United States Attorney

---

[*] Honorable Joseph E. Irenas, Senior District Judge for the District of New Jersey, sitting by designation.

Office of United States Attorney
615 Chestnut Street
Philadelphia, PA   19106

     Counsel for Appellee

---

OPINION  OF  THE  COURT

---

AMBRO, Circuit Judge

     Edward Coleman appeals from a judgment of conviction and sentence imposed by the United States District Court for the Eastern District of Pennsylvania.  He contends first that the Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub. L. No. 108-21, 117 Stat. 650, is unconstitutional insofar as it changed the structure of the United States Sentencing Commission to allow the President to appoint all Commission members from within the Executive Branch, as opposed to the former system under which at least three members were federal judges.  Id. § 401(n) (amending 28 U.S.C. § 991(a)) (hereafter, the "Feeney Amendment").[1]  He also asserts that, because prior convictions

---

     [1] This amendment, and others attached to the PROTECT Act, are often collectively referred to as the "Feeney Amendment" after Representative Tom Feeney, who sponsored the amendments in the House of Representatives.  We refer to

increased the statutory minimum sentence for his crimes, those convictions should have been charged in the indictment and proved to the jury beyond a reasonable doubt, and that the Government's failure to do so violated the Sixth Amendment. We find Coleman's arguments unpersuasive, and therefore affirm.

## I. Factual Background and Procedural History

In June 2003, a Philadelphia police officer stopped Coleman's vehicle. As he approached the driver's side of the car, the officer saw that Coleman had a gun. The officer ordered Coleman and the passengers out of the car, but Coleman drove away at a high rate of speed. He crashed the car shortly thereafter and fled on foot. When police arrived, they discovered Coleman's driver's license (bearing an alias, "John Long"), over $1,200 in cash, and a loaded handgun with an obliterated serial number in the car. Police subsequently located Coleman at his girlfriend's house and arrested him. During a search of his person, police discovered cocaine and the prescription drug Xanax.

Coleman was arraigned and released on bail. In September 2003, police officers observed him driving a car without a license plate. When they attempted to stop the car,

the particular amendment of 18 U.S.C. § 991(a) at issue here as the "Feeney Amendment" for simplicity.

Coleman fled on foot. He was apprehended shortly thereafter, and in a subsequent search of his vehicle police discovered a loaded handgun and crack cocaine.

Coleman was indicted on five counts. The first three counts stemmed from the June 2003 arrest, and charged him with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) and possession of a controlled substance in violation of 21 U.S.C. § 844. Counts Four and Five stemmed from the September 2003 arrest, and likewise charged him with unlawful possession of a firearm and possession of a controlled substance. Pursuant to Coleman's motion to sever the indictment, he was tried on Counts One through Three in July 2004; the jury convicted him on each one. He then pled guilty to Counts Four and Five.

At sentencing, the District Court determined that Coleman had five prior convictions (four for drug trafficking and one for a violent felony), and thus qualified as an armed career criminal under 18 U.S.C. § 924(e). This increased the statutory minimum for his firearm possession offenses to at least 15 years in prison. Id. In light of his designation as an armed career criminal, the District Court applied U.S.S.G. § 4B1.4 and correctly calculated a recommended sentencing range for his firearm possession offenses of 235-293 months in prison. The Court decided that this advisory range was in accord with the sentencing factors set forth in 18 U.S.C. § 3553(a), and after considering those factors and the advisory range, sentenced

Coleman to 240 months in prison on Counts One and Four (the firearm possession charges), with a concurrent sentence of 36 months in prison on the remaining drug possession counts.[2] He appeals.

## II. Jurisdiction and Standard of Review

The District Court had subject matter jurisdiction over this case under 18 U.S.C. § 3231. We exercise jurisdiction over Coleman's appeal pursuant to 28 U.S.C. § 1291 and (to the extent he contends his sentence was imposed in violation of law) 18 U.S.C. § 3742. Since Coleman raises purely legal issues of statutory and constitutional interpretation, our review is plenary. See, e.g., United States v. Singletary, 268 F.3d 196, 199 (3d Cir. 2001).

## III. Analysis

At the outset, we note that Coleman does not challenge the District Court's calculation of the recommended Guidelines sentence, or the reasonableness of the Court's decision to sentence him within that range. Rather, he contends that the entire Sentencing Guidelines system is unconstitutional because the Feeney Amendment allows the President to appoint to the

---

[2] The Court also sentenced Coleman to five years of supervised release upon leaving prison, and a special assessment of $500.

6

Sentencing Commission only members of the Executive Branch. This, he argues, violates the separation of powers among the three branches of Government mandated by our Constitution because it places control over indictment, prosecution, and sentencing in the hands of the Executive Branch. He also asserts that, because his prior drug and violent felony convictions increased the statutory minimum punishment for his firearm possession offenses, the Sixth Amendment required the Government to charge his prior convictions in the indictment and prove them to the jury beyond a reasonable doubt. We consider each argument in turn.

**A. Does the Feeney Amendment Violate the Separation of Powers?**

The United States Sentencing Commission is an "independent commission in the judicial branch" composed of seven voting members selected by the President with the advice and consent of the Senate. 28 U.S.C. § 991(a). Prior to the Feeney Amendment in 2003, at least three members of the Commission were to be judges selected from a list submitted to the President by the Judicial Conference of the United States. Id. The Feeney Amendment modified this provision to state that "no more than three" members may be judges, thus allowing the President to appoint, if he wishes, only members of the Executive Branch to the Commission.

The Commission is charged, <u>inter alia</u>, with drafting and

promulgating the Sentencing Guidelines, 28 U.S.C. § 994, and must submit proposed amendments to the Guidelines to Congress, which then has a specified period of time (at least 180 days) to modify or disapprove them before they become effective. Id. § 994(p). Guidelines sentence calculations must fall within the statutory range prescribed by Congress. See id. § 994(a) (stating that the Guidelines must be "consistent with all pertinent provisions of any Federal statute"); U.S.S.G. § 5G1.1 (stating that the Guidelines are inapplicable if the minimum sentence recommended by the Guidelines is higher than the statutory maximum, or if the maximum sentence recommended by the Guidelines is lower than the statutory minimum).

In Mistretta v. United States, 488 U.S. 361 (1989), the Supreme Court held that the Sentencing Commission, as it was then constituted, did not violate the separation of powers. The Court held that Congress was within constitutional bounds in delegating to the Commission authority to promulgate the Guidelines, id. at 374-79, and that the composition of the Commission (including at least three federal judges) was constitutional. Id. at 397-408. The Court noted that "Congress' decision to create an independent rulemaking body to promulgate sentencing guidelines and to locate that body within the Judicial Branch is not unconstitutional unless Congress has vested in the Commission powers that are more appropriately performed by the other Branches or that undermine the integrity of the Judiciary." Id. at 385. It deemed the functions of the Commission, particularly the promulgation of the Guidelines, to

8

be well within the judiciary's role. The Court noted, for example, that "the sentencing function long has been a peculiarly shared responsibility among the Branches of Government and has never been thought of as the exclusive constitutional province of any one Branch." Id. at 390. It dismissed as "fanciful" the argument that the President's power to appoint and remove the Commission's members gave him unconstitutional authority over the judiciary. Id. at 409; see id. at 410 ("We simply cannot imagine that federal judges will comport their actions to the wishes of the President for the purpose of receiving an appointment to the Sentencing Commission."). Moreover, the Court concluded that the Commission "is not a court and exercises no judicial power," and thus there was no concern that membership on the Commission would "vest Article III power in nonjudges or require Article III judges to share their power with nonjudges." Id. at 408.

The Court noted in dicta that "[if] Congress decided to confer responsibility for promulgating sentencing guidelines on the Executive Branch, we might face the constitutional questions whether Congress unconstitutionally had assigned judicial responsibilities to the Executive or unconstitutionally had united the power to prosecute and the power to sentence within one Branch." Id. at 391 n.17. Coleman seeks to build on this observation to argue that, since the Feeney Amendment effectively removed all mandatory judicial input from the Sentencing Commission (and thus the Guidelines), the result is

9

an unconstitutional consolidation of power in the Executive Branch.  See United States v. Pojilenko, 416 F.3d 243, 249 n.6 (3d Cir. 2005) (noting that "the Feeney Amendment's change in the composition of the Sentencing Commission may provide an arguable basis for distinguishing Mistretta," but rejecting the argument on plain-error review).  He relies heavily on a 2004 District Court decision in the District of Oregon — United States v. Detwiler, 338 F. Supp. 2d 1166 (D. Or. 2004) — that is, to our knowledge, the only federal court decision to accept Coleman's argument.

We need not consider whether Detwiler was correctly decided under the then-mandatory Guidelines regime, because the Supreme Court's landmark decision in United States v. Booker, 543 U.S. 220 (2005), dramatically altered the equation. Indeed, the District Court's remedy for the perceived separation of powers violation in Detwiler — conversion of the mandatory Guidelines into a non-binding, advisory system, see 338 F. Supp. 2d at 1182 — is essentially the remedy the Supreme Court adopted in Booker, albeit for a different constitutional violation. See Booker, 543 U.S. at 259-61 (excising the requirement in 18 U.S.C. § 3553(b)(1) that the Guidelines be applied mandatorily, and stating that henceforth the Guidelines are advisory and should be considered by sentencing courts as one of several sentencing factors under 18 U.S.C. § 3553(a)).

Thus, while Coleman's argument that the Feeney Amendment unconstitutionally allows the President to control

10

sentencing might have been persuasive while the Guidelines were still mandatory, it is misplaced under the now-advisory system. Regardless of the composition of the Commission, the Guidelines it promulgates do not control sentencing; the Guidelines' recommended range may be modified or disregarded by a district court upon consideration of the other sentencing factors Congress has identified in § 3553(a).

We also reject Coleman's argument that the Guidelines, though advisory, are nonetheless presumptively reasonable and thus give rise to the same separation of powers concerns (the argument being, we presume, that the Guidelines are still mandatory in fact). In United States v. Cooper, 437 F.3d 324 (3d Cir. 2006), we observed that "a within-guidelines sentence is not necessarily reasonable per se" because such a system "would come close to restoring the mandatory nature of the guidelines excised in Booker." Id. at 331 (emphasis added). We also declined to "adopt a rebuttable presumption of reasonableness for within-guidelines sentences." Id. at 331-32. Although the Guidelines' recommendation is one of the factors to be considered under § 3553(a) — and thus "a within-guidelines range sentence is more likely to be reasonable than one that lies outside the advisory guidelines range," id. at 331(emphasis added) — this does not mean a presumption of reasonableness attaches to the Guidelines range. Hence, even assuming for the sake of argument that Coleman's assertion might have some force in a Circuit where the Guidelines are presumptively reasonable, see, e.g., United States v. Mykytiuk,

11

415 F.3d 606, 608 (7th Cir. 2005), it is not persuasive here.[3]

**B.    Were Coleman's Sixth Amendment Rights Violated?**

We next turn to Coleman's argument that, because his prior convictions for drug offenses and a violent crime increased the statutory minimum penalty for his firearm offenses pursuant to 18 U.S.C. § 924(e), those offenses should have been charged in the indictment and proved to the jury beyond a reasonable doubt. He contends that the Government's failure to do so violates the Sixth Amendment.

First, we note that the Government did charge Coleman's prior offenses in the indictment. In a Notice of Prior Convictions attached to the indictment, the grand jury "further charge[d]" that Coleman committed his firearm offenses "after having been convicted of serious drug offenses and a violent felony in . . . Pennsylvania." The Notice then listed the five prior convictions. This does not completely dispose of

---

[3] Nor did the District Court apply the Guidelines as if they were presumptively reasonable. It sentenced Coleman two weeks after the Supreme Court's decision in Booker, and noted that the Guidelines were advisory. Moreover, it carefully considered the other relevant § 3553(a) factors before deciding that the sentence of 240 months was justified on the firearm possession counts.

12

Coleman's argument, however, because the Government did not prove the prior convictions to the jury beyond a reasonable doubt.  As we explain below, the Government is not required to do so (indeed, it is not required to charge them in the indictment) under current Supreme Court precedent.

This issue is controlled by Almendarez-Torres v. United States, 523 U.S. 224 (1998), which held that prior convictions that increase the statutory maximum for an offense are not elements of the offense and thus may be determined by the District Court by a preponderance of the evidence.  See id. at 243 ("[R]ecidivism . . . is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence.").[4]  This holding was preserved in Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (emphasis added)), and Booker, 543 U.S. at 244 (same).  Moreover, we have held expressly that the Almendarez-Torres exception survived Booker and its antecedents.  See United

---

[4]  Although § 924(e) imposes an enhanced statutory minimum punishment for firearm possession, it (like an enhanced statutory maximum) raises the allowed punishment for the offense, and the Supreme Court has therefore applied Almendarez-Torres to sentences under this section.  See Shepard v. United States, 544 U.S. 13, 16, 25 (2005).

States v. Ordaz, 398 F.3d 236, 241 (3d Cir. 2005) (noting "a tension between the spirit of Blakely [v. Washington, 542 U.S. 296 (2004),] and Booker that all facts that increase the sentence should be found by a jury and the Court's decision in Almendarez-Torres, which upholds sentences based on facts found by judges rather than juries," but concluding that "[t]he holding in Almendarez-Torres remains binding law, and nothing in Blakely or Booker holds otherwise").

Coleman contends, however, that the Supreme Court's decision in Shepard v. United States, 544 U.S. 13 (2005), decided two weeks after our decision in Ordaz, calls into question the continuing validity of Almendarez-Torres, and he urges us to rely on Shepard as authority to limit Almendarez-Torres to its facts and deem it inapplicable to his Sixth Amendment challenge. We rejected precisely this argument in a non-precedential opinion earlier this term. See United States v. Francisco, No. 05-1105, 165 Fed. Appx. 144 (3d Cir. 2006). We have reviewed the reasoning in Francisco and find it persuasive, and thus adopt it here.

As we noted in Francisco, Shepard concerned whether a prior burglary conviction was a "violent felony" that triggered the enhanced statutory minimum under 18 U.S.C. § 924(e). The Supreme Court held that, in determining whether the burglary was a violent felony, the sentencing court had to rely on charging documents, elements of offenses, plea colloquies, and express findings by the trial judge, and could not look to police

14

reports or complaint applications.  <u>Shepard</u>, 544 U.S. at 16, 25-26.  A plurality of the Court held that, in a state where the statutory definition of burglary is limited to the elements of "generic" burglary,[4] "a judicial finding of a disputed prior conviction is made on the authority of <u>Almendarez-Torres</u>."  <u>Id.</u> at 25.  The plurality contrasted this to states where the statutory definition of burglary encompasses more than the "generic" offense.  In these situations, considering sources like police reports or complaints to determine whether the burglary at issue is nonetheless "generic" would be "too far removed from the

---

[4]  Because § 924(e)(2) states simply that "burglary" is <u>per se</u> a violent felony, the Supreme Court has distinguished between "generic" burglary (<u>i.e.</u>, "roughly corresponding to the definitions of burglary in a majority of the States' criminal codes," which satisfies § 924(e)(2)) and non-"generic" burglary (<u>i.e.</u>, deviations from the typical definition of burglary, which need not qualify as "burglary" within the meaning of § 924(e)(2)).  <u>Taylor v. United States</u>, 495 U.S. 575, 589 (1990).  As the Court explained, such a distinction is necessary because it is "implausible that Congress intended the meaning of 'burglary' for purposes of § 924(e) to depend on the definition adopted by the State of conviction.  That would mean that a person convicted of unlawful possession of a firearm would, or would not, receive a sentence enhancement based on exactly the same conduct, depending on whether the State of his prior conviction happened to call that conduct 'burglary.'"  <u>Id.</u> at 590-91.

15

conclusive significance of a prior judicial record, and too much like the findings subject to <u>Jones[ v. United States</u>, 526 U.S. 227 (1999)][5] and <u>Apprendi</u>, to say that <u>Almendarez-Torres</u> clearly authorizes a judge to resolve the dispute." <u>Id.</u>

In dissent, Justice O'Connor, joined by Justices Kennedy and Breyer, worried that "today's decision reads <u>Apprendi</u> to cast a shadow possibly implicating recidivism determinations, which until now had been safe from such formalism." <u>Id.</u> at 37 (O'Connor, J., dissenting). Justice Thomas, who criticized the <u>Almendarez-Torres</u> exception in his concurring opinion in <u>Apprendi</u>, <u>see</u> 530 U.S. at 520-21 (Thomas, J., concurring), repeated his view that "<u>Almendarez-Torres</u> . . . has been eroded by this Court's subsequent Sixth Amendment jurisprudence, and a majority of the Court now recognizes that <u>Almendarez-Torres</u> was wrongly decided. The parties do not request it here, but in

---

[5] In <u>Jones</u>, the Supreme Court held that the federal carjacking statute, 18 U.S.C. § 2119, sets out three separate crimes based on varying degrees of aggravation (the elements of which must be charged in the indictment and proved to the jury beyond a reasonable doubt), rather than a single crime with three possible maximum sentences based on different degrees of aggravation (which could be determined by a preponderance of the evidence at sentencing), and noted that the question was different from that confronted in <u>Almendarez-Torres</u> because that decision "rested in substantial part on the tradition of regarding recidivism as a sentencing factor, not as an element to be set out in the indictment." <u>Jones</u>, 526 U.S. at 238-29, 248-49.

16

an appropriate case, this Court should consider Almendarez-Torres' continuing viability. ” Shepard, 544 U.S. at 27-28 (Thomas, J., concurring) (citations omitted). The plurality simply stated that "[i]t is up to the future to show whether the dissent is good prophesy" with regard to the continuing viability of Almendarez-Torres. Id. at 26 n.5.

Our observation in Francisco is apt:

> The various opinions in Shepard appear to agree on one thing: the door is open for the Court one day to limit or overrule Almendarez-Torres. But that day has not yet come, and we are well aware of the Supreme Court's admonition that "'[i]f a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions.'"

Francisco, 165 Fed. Appx. at 148 (quoting Agostini v. Felton,

17

521 U.S. 203, 237 (1997)).  Therefore, we hold that <u>Shepard</u> did not affect the continuing validity of <u>Almendarez-Torres</u>, and we join the other Circuit Courts that have held likewise.  <u>See, e.g.</u>, <u>United States v. Childs</u>, 403 F.3d 970, 972 (8th Cir. 2005); <u>United States v. Schlifer</u>, 403 F.3d 849, 852 (7th Cir. 2005); <u>United States v. Moore</u>, 401 F.3d 1220, 1224 (10th Cir. 2005).

\*　\*　\*　\*　\*

In sum, we hold that the Feeney Amendment, insofar as it changed the composition of the United States Sentencing Commission, does not violate our Constitution's separation of powers.  In addition, as the Supreme Court's decision in <u>Almendarez-Torres</u> remains good law after <u>Shepard</u>, Coleman's argument regarding the Government's failure to prove his prior convictions to the jury beyond a reasonable doubt is unpersuasive.  We therefore affirm the judgment of conviction and sentence.