

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-9-2009

# USA v. Robinson

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-4557

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. Robinson" (2009). *2009 Decisions.* Paper 1561.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1561

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-4557

UNITED STATES OF AMERICA

v.

GREGORY ROBINSON,
Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 06-cr-00604-1)
D.C. Judge: Honorable Michael M. Baylson

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 26, 2009

Before: SCIRICA, *Chief Judge*, AMBRO and SMITH, *Circuit Judges*.

(Filed: April 9, 2009)

OPINION OF THE COURT

SCIRICA, *Chief Judge*.

Gregory Robinson was convicted of Hobbs Act robbery, 18 U.S.C. § 1951, of the

Wishing Well Market in Philadelphia; of carrying a firearm during and in relation to a

crime of violence, § 924(c)(1); and of possession of a firearm by a convicted felon,

§§ 922(g)(1), 924(e).  He was sentenced to a mandatory life term in prison, an additional eighty-four month prison term, restitution, and a special assessment.  Robinson challenges the convictions and his sentence.

At trial, the government presented evidence, including eyewitness testimony, that Robinson, armed with a revolver, had robbed the Wishing Well Market, fled, and was apprehended nearby after shooting at a Philadelphia police officer.  Two Wishing Well employees—Arthur Berg and former owner Michael Wishing—both eyewitnesses, recounted the robbery in their trial testimony.  Berg was working in between two cashier's booths at the front of the store when he saw Robinson in the store, about fifteen feet away from him, armed with a silver revolver.  Robinson walked toward an office located inside the store, also near the front.  As Robinson was about to enter the office, he turned to face Berg, who got an unobstructed look at him, including a good look at his face.  He spoke directly to Berg, commanding him to stay where he was.  Robinson then entered the office, taking Michael Wishing, who had been working at a desk there, by surprise.  Robinson pushed Wishing, pointed a gun into his neck, and demanded he take money from the store safe—approximately $700—and place it into a red bag. "[G]ive me the money or I'll blow your f'ing head off," Robinson commanded, and while Wishing was filling the bag, Robinson ordered Berg to stay put:  "[D]on't move or I'll shoot this M.F."  (J.A. 49, 69.)  After Wishing had placed the money in the bag, Robinson walked out of the store, placing the gun in his pants.

2

In addition to identifying Robinson as the robber in court, Berg identified the red bag and some clothing—a jacket and a hat—as items carried and worn by Robinson in the store. And he identified the gun used in the robbery. The clothing, bag, and gun Berg identified at trial were all items recovered from Robinson when he was apprehended. Michael Wishing testified he did not see the robber clearly because he was focused intently on the gun pointed directly at him—so intently that he could see bullets in the gun's chambers. Wishing identified both the gun and the red bag as those used in the robbery. A third employee, Tyrone Fortune, testified that he ran away down a store aisle to call 911 as soon as he saw the tip of a gun. He saw the robber only momentarily, and only from behind.

Immediately after the robbery, Berg ran outside and flagged down Lieutenant George Kappe of the Philadelphia Police Department. Berg gave Kappe a description of the robber, noted the robber was armed, and rode in Kappe's police car looking for the man. Soon, they found Robinson walking on Mount Vernon Street, not far from the Wishing Well Market. Berg identified Robinson as the robber, and Kappe exited his police car with his gun drawn, identifying himself as a police officer.

Kappe and Berg's testimony detailed the gunfight that ensued. Robinson turned, put down the red bag, removed the gun from his pants, and—holding the gun underneath the jacket he was carrying—fired two shots at Kappe. Kappe returned fire, and Robinson ran across the street, taking position behind a parked car. Kappe followed, but he slipped and fell as he approached the car. Robinson attacked. "I got you now, mother fucker,"

3

Robinson said just before firing again at Kappe. (J.A. 137.) Kappe fired back, deterring Robinson's attack, and Robinson fled down the street. Kappe called for assistance, then pursued on foot.

During the pursuit, Robinson pointed his gun back at Kappe a third time, prompting Kappe to fire yet again. Robinson ran into an abandoned lot, but was fenced in and had to return to the street. "Shoot me, motherfucker," he demanded, pointing his gun at Kappe, who had caught up and taken a position behind another car. (J.A. 152.) Other officers then arrived at the scene, and one of those officers shot at Robinson before Robinson finally gave up his weapon and was arrested. Robinson had been shot twice, and he was taken to the hospital.

Supported by Kappe and Berg's testimony, the government contended Robinson fired first, revealing his consciousness of guilt. This was evidence, in addition to the in-court identifications, upon which the jury could link Robinson to the robbery. Robinson's lawyers—he did not testify in his own defense—contended he did not commit the robbery. But significantly, Robinson does not challenge the legality of Berg's eyewitness identification of him as the robber. This is telling because Berg's identification was the strongest evidence against him. Instead, the crux of his appeal centers on the consciousness-of-guilt theory. He contends errors involving the consciousness-of-guilt argument were not harmless because of confusion or inconsistencies in the testimony of two of the Wishing Well employees. Michael Wishing and Tyrone Fortune had misidentified or expressed confusion about certain details of the robber—the color of his

4

hat, the color of his jacket, his age, or some combination of these. Although Wishing and Fortune testified they did not have a clear look at the robber—as Arthur Berg did—Robinson contends their misidentifications established doubt that he was the robber.

Robinson also appeals his sentence. The District Court sentenced Robinson to a mandatory term of life in prison under the three-strikes law, 18 U.S.C. § 3559(c), on the counts of robbery and possession of a firearm by a convicted felon. It sentenced him to eighty-four months imprisonment on the remaining count, to be served consecutive to the sentence for the other two counts. The District Court ordered restitution in the amount of $300 and a special assessment of $300. Robinson appeals the mandatory life sentence imposed under the three-strikes law because the judge, not the jury, found the facts of the predicate offenses.[1] We will affirm. The evidence tying Robinson to the robbery, especially Berg's identification, is compelling. Although we affirm the District Court on all challenged issues, we find that any error would have been harmless.

I

Robinson's lawyers attempted to counter the consciousness-of-guilt argument at trial, contending he did not fire his gun first but was responding to police fire. They suggested Kappe fired the first shot, implying Berg and Kappe, who had both testified

---

[1]The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction over the final judgment of the District Court under 28 U.S.C. § 1291 and jurisdiction to review the sentence under 18 U.S.C. § 3742. We review evidentiary rulings of the District Court for abuse of discretion, but our review is plenary regarding interpretations of the Federal Rules of Evidence. *Great Am. Ins. Co. v. Norwin Sch. Dist.*, 544 F.3d 229, 251 (3d Cir. 2008).

that Robinson fired first, were mistaken or trying to cover up for Kappe. Robinson's lawyers called as a witness a police internal affairs investigator, Michael Young, who investigated the scene of the shooting. In the area where Kappe was standing when the gunfight began, the investigation apparently recovered only bullet casings discharged from Kappe's own gun—and no bullets or bullet fragments fired from any gun.[2] Robinson contends this lack of evidence means he did not fire first. Moreover, Robinson suggests the government, during its cross-examination of Young, asked questions beyond the scope of the direct examination, which was intended to elicit information only about the findings of the investigation. On cross-examination, Young stated the purpose of the investigation, which was to determine whether the police officers' discharge of their weapons was within the police department's guidelines. Earlier in the trial, Kappe had testified that he was not disciplined or suspended as a result of the gunfight. Kappe's in-court statements, taken together with Young's statements about the purpose of the investigation, Robinson contends, invoked conclusions of the investigation report, which

---

[2]The investigation did recover numerous bullet fragments within the larger area of the gunfight, away from where Kappe stood at its outset. According to Young's testimony, some of these bullet fragments were fired from a gun not belonging to a police officer. Young was not able to say whether these bullets were fired from Robinson's gun, but Robinson was the only person, other than a police officer, who allegedly fired a gun at the scene.

In addition to the eyewitness testimony of Berg and Kappe, other evidence suggests Robinson fired his weapon. One of the officers who responded to Lieutenant Kappe's call for help, Andrew Harvey, secured Robinson's revolver. Harvey testified that he saw another investigator, from the special weapons and tactics unit, remove four spent casings from Robinson's gun.

6

are out-of-court statements: if Kappe was not disciplined or reprimanded, Robinson's theory goes, the report must have concluded he was justified in discharging his weapon. We do not agree. Statements from the investigative report were not introduced, and the testimony was not hearsay. We do not believe the District Court abused its discretion by permitting this testimony. Moreover, no opinion testimony was elicited about whether Kappe was justified in firing his weapon.

Robinson also contends the prosecution impermissibly bolstered the credibility of Kappe—including his testimony that Robinson fired first—by vouching for the thoroughness of the internal investigation. During closing arguments, the prosecutor juxtaposed the investigator's testimony about the thoroughness of the investigation and Lieutenant Kappe's testimony that he was not disciplined.

> . . . They completed a very thorough investigation. Kappe, himself, told you that he wasn't disciplined, he wasn't suspended, he resumed work right away.

(J.A. 438.) Then the prosecutor told the jury it could "rest assured that if there was any wrongdoing—" before being cut off by objection. (*Id.* at 438.) The District Court denied Robinson's motion for a mistrial and gave the jury two limiting instructions.

To find vouching, two criteria must be met: (1) "the prosecutor must assure the jury that the testimony of a government witness is credible;" and (2) "this assurance must be based on either the prosecutor's personal knowledge, or other information not contained in the record." *United States v. Vitillo*, 490 F.3d 314, 327 (3d Cir. 2007) (*quoting United States v. Harris*, 471 F.3d 507, 512 (3d Cir. 2006)); *United States v.*

7

*Walker*, 155 F.3d 180, 187 (3d Cir. 1998). The defendant must "identify as the basis for [the] comment an explicit or implicit reference to either the personal knowledge of the prosecuting attorney or information not contained in the record." *Walker*, 155 F.3d at 187. "Vouching is distinguishable from a personal opinion based on the evidence presented at the trial." *United States v. Dispoz–O–Plastics, Inc.*, 172 F.3d 275, 283 (3d Cir. 1999).

Interpreting the statements in a manner most favorable to Robinson, the context here could suggest the prosecutor might have intended to invoke conclusions of the investigation report by telling the jurors Kappe would have been disciplined had there been wrongdoing. But the statement was not completed. We see no vouching, and in any event the District Court issued curative instructions. Furthermore, if there was error, it was harmless, as explained in Part III, below. *See Vitillo*, 490 F.3d at 329 (noting that vouching is non-constitutional error subject to harmless error review).

II

Robinson's lawyers also tried to present a second theory at trial to counter the consciousness-of-guilt argument. This alternate theory would have conceded Robinson fired first but would suggest he fired for reasons unrelated to a consciousness of guilt. Robinson proffered a toxicology report from the hospital, showing he had tested positive for cocaine shortly after the robbery. Evidence he was "high," Robinson claims, would tend to negate his consciousness of guilt. The prosecution objected to the report because

Robinson proffered it without any testimony to interpret the positive test result. The District Court sustained the objection.

The report did not confirm how much cocaine was in Robinson's blood; it only noted the test for cocaine metabolites was "positive" shortly after the arrest. As the District Court correctly stated, the report did not provide information about how much cocaine Robinson used, when he had used it, how it would affect a person of his size, or most importantly whether it would lead someone to fire at a police officer. Absent information that would explain the relationship between the cocaine use and the effect on Robinson's behavior, the District Court did not abuse its discretion by refusing to admit the report.

III

Even if there were errors in this case, "it is highly probable that [they] did not contribute to the judgment." *Dispoz–O–Plastics*, 172 F.3d at 286 (*quoting United States v. Zehrbach*, 47 F.3d 1252, 1265 (3d Cir. 1995) (en banc)). All the evidentiary rulings Robinson contests relate to the gun battle with Lieutenant Kappe after the robbery. But the evidence tying Robinson to the robbery was compelling. Berg, the eyewitness who had the best view of the robber, testified that he observed Robinson committing the crime. He identified clothing Robinson was wearing during the robbery and the red bag he was carrying at the time of the robbery, which was found at the scene of the shooting. Berg also stated at trial that the revolver retrieved from the shooting was the same revolver used during the robbery. Michael Wishing, the former store owner, also identified the

9

revolver and the red bag. Although Wishing and Tyrone Fortune were confused or mistaken about the color of the robber's clothing and his age, the jury was entitled to give less weight to these aspects of their testimony. These men testified that they only saw the robber momentarily. Undoubtedly, Berg had the best view, for the longest period of time, and his identification was the most reliable.

With respect to the prosecutor's statements during closing arguments, we see no error. Furthermore, we consider "the scope of the comments and their relationship to the proceeding" and "the extent of any curative instructions." *Id.* In response to the prosecutor's statement, the District Court issued two limiting instructions. One came immediately after the prosecutor's "rest assured" comment, reminding the jury that "it's your recollection of the evidence that governs." (J.A. 438.) The District Court said the government can suggest inferences to be drawn from the record but the jury can disregard arguments if the prosecutor did not base them on the evidence. Later, the District Court instructed that "what happened internally within the police department . . . is not really of your concern in your deliberations." (J.A. 463.) Given the strength of the evidence and the limiting instructions, we find an error, if any, in this case—involving either the evidentiary rulings or the prosecutor's statement—was harmless.

IV

Section 3559(c) of Title 18 imposes a mandatory life sentence on serious violent felony offenders convicted of certain prior serious felonies. Robinson challenges the application of this "three strikes" rule because the judge and not the jury found the facts

10

of the predicate offenses.  The law permits this judicial finding of prior convictions.

*Almendarez-Torres v. United States*, 523 U.S. 224 (1998); *United States v. Coleman*, 451 F.3d 154, 159–60 (3d Cir. 2006); *United States v. Weaver*, 267 F.3d 231, 250–51 (3d Cir. 2001).

## V

For the foregoing reasons, we will affirm the judgment of the District Court.