In the

# United States Court of Appeals
## For the Seventh Circuit

No. 17-2749

JASON L. WHITE,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:16-cv-00166-DRH — **David R. Herndon**, *Judge.*

ARGUED JANUARY 20, 2021 — DECIDED AUGUST 9, 2021

Before EASTERBROOK, WOOD, and BRENNAN, *Circuit Judges.*

BRENNAN, *Circuit Judge.* Jason White, convicted of possessing a firearm as a felon, petitions under 28 U.S.C. § 2255 to vacate, set aside, or correct his 30-year sentence. His sentence included an armed career criminal enhancement, which requires at least three previous convictions "for a violent felony or a serious drug offense." 18 U.S.C. § 924(e)(1). After a change in the law, the parties agreed the sentencing court had relied on one of White's previous convictions that no longer

supported the enhancement. For that inapplicable conviction, the district court substituted in another—an Illinois state conviction for cocaine delivery—and concluded White still qualified as an armed career criminal. So the court denied his § 2255 petition.

Given two of our court's recent decisions—*Dotson v. United States*, 949 F.3d 317 (7th Cir. 2020), and *United States v. Ruth*, 966 F.3d 642 (7th Cir. 2020)—reasonable jurists may debate whether a court may substitute one predicate conviction for another for a sentencing enhancement, as well as whether an Illinois cocaine conviction may serve as a predicate offense. We therefore granted White a certificate of appealability.

White's petition falls short, however. Not only did he have fair notice that the substitute conviction could be used as a predicate offense, but waiver and procedural default also foreclose his challenge on both questions. We therefore affirm the denial of his petition.

**I**

In 2011, Jason White and Christopher Evans engaged in a fistfight outside a nightclub in Brooklyn, Illinois (just across the Mississippi River from St. Louis). The fight eventually broke up, and Evans went to his girlfriend's house. As Evans walked onto the front porch, White appeared with a loaded gun in hand. White raised the gun and tried to strike Evans with it. Evans blocked the blow, but the gun went off. The bullet struck Evans in the abdomen and grazed the leg of Evans's girlfriend, who had opened the front door to let in Evans.

White was charged as a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). A jury found him guilty in

2013, and he was sentenced later that year. White's lengthy criminal history included twelve previous adult convictions—all in Madison County, Illinois—four of which are implicated in this appeal:

- Delivery of crack cocaine (2003);
- Attempted armed robbery (2004);
- Aggravated fleeing (2007); and
- Delivery of crack cocaine near a church (2008).

The district court considered whether White should be designated as an armed career criminal, subject to an enhanced sentence under 18 U.S.C. § 924(e), the Armed Career Criminal Act (ACCA). Section 924(e) prescribes that a person who violates § 922(g) and has three previous convictions for a "violent felony" or "serious drug offense" receives an enhanced sentence as an armed career criminal. To support this designation for White, the government filed a notice that listed three predicate offenses: the attempted armed robbery in 2004 and the drug deliveries in 2003 and 2008. White objected to the district court's consideration of the aggravated fleeing conviction, a predicate offense not listed in that notice.

In sentencing White, the district court relied on three predicate convictions identified in his presentence investigation report, which differed slightly from the government's notice. The district court cited as predicate convictions the 2008 drug delivery, the attempted armed robbery, and the aggravated fleeing. Despite the government's request, the district court did not include the 2003 drug delivery conviction as a predicate offense. The district court designated White as an armed career criminal, which resulted in a statutory sentencing range of imprisonment of fifteen years to life. 18 U.S.C. § 924(e)(1). The Sentencing Guidelines produced an advisory

range of 30 years to life, and the district court sentenced White to 30 years' imprisonment.

White filed a direct appeal, challenging the district court's denial of a motion to suppress but not his sentence. This court affirmed his conviction. *United States v. White*, 781 F.3d 858 (7th Cir. 2015). White then timely filed this § 2255 petition to challenge his sentence. He noted that the aggravated fleeing conviction, which the district court had relied on over his objection, fell under the residual clause deemed unconstitutional in *Johnson v. United States*, 576 U.S. 591 (2015). So White asked to be resentenced.

The government agreed with White that under *Johnson* the aggravated fleeing conviction could not be considered as part of the armed career criminal determination. But the government highlighted that White's 2003 drug delivery conviction, which the district court ultimately did not include as part of its enhancement determination, qualified as a predicate "serious drug offense" for armed career criminal status. The government also argued that White had procedurally defaulted this issue for purposes of § 2255 by failing to raise it on direct appeal. White thus had to demonstrate cause and actual prejudice from the failure to appeal. Given *Johnson*, the government continued, White may have established cause. But the government argued he had not established prejudice because he still had three predicate convictions—the attempted armed robbery, the 2008 drug delivery, and the substitute 2003 drug delivery.

White pushed back. He contended that he received an armed career criminal designation based on a finding the sentencing court had not made. He also asserted the attempted armed robbery was not a valid ACCA predicate after *Johnson*.

But White did not dispute the validity of his two drug delivery convictions as ACCA predicates.

The district court denied White's § 2255 petition. The court reasoned that, even ignoring the aggravated fleeing conviction, White still had the two drug delivery convictions and the attempted armed robbery conviction to serve as ACCA predicates. The district court also denied White's challenge to the use of his attempted armed robbery conviction as an ACCA predicate and declined to issue a certificate of appealability under 28 U.S.C. § 2253(c).

White timely appealed and moved for a certificate of appealability with this court. We granted White's motion, and the parties briefed his petition. We review de novo the legal questions presented on appeal from the denial of a § 2255 petition. *Waagner v. United States*, 971 F.3d 647, 653 (7th Cir. 2020).

## II

Section 2255 provides possible relief for a federal prisoner who argues their sentence "was imposed in violation of the Constitution or laws of the United States, or [if] the court was without jurisdiction to impose such sentence, or [if] the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255(a). "Relief under § 2255 is available 'only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice.'" *United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014) (quoting *Blake v. United States*, 723 F.3d 870, 878–79 (7th Cir. 2013)).

White argues that after recent changes in the law, he no longer has three predicate offenses required for an armed

career criminal status. The parties agree that after *Johnson*, the aggravated fleeing no longer counts as an ACCA predicate. This court granted White a certificate of appealability because, after two recent decisions, reasonable jurists may debate two aspects of substituting one previous conviction for another to support an ACCA enhancement. First, does the substitution comport with fair notice principles? *See Dotson*, 949 F.3d at 320–22. Second, was it proper for the district court to rely on a 2003 drug delivery conviction in light of *Ruth*, 966 F.3d at 644, in which this court ruled that Illinois defines "cocaine" more broadly than does federal law?

## A

The certificate of appealability sets forth the issues, yet White's opening brief failed to address the first question. Instead, his submission went directly to the second issue of whether, after *Ruth*, his 2003 and 2008 drug delivery convictions qualify as ACCA predicates.

A party that omits from its opening appellate brief any argument in support of its position waives or abandons that party's claim on appeal. *See United States v. Cisneros*, 846 F.3d 972, 978 (7th Cir. 2017); *United States v. Cruse*, 805 F.3d 795, 818 n.7 (7th Cir. 2015) (noting that arguments raised for the first time in a reply brief are waived); *see also* FED. R. APP. P. 28(a)(8) (requiring that an appellant's brief contain the appellant's contentions and the reasons for them). Along the same line, this court has repeatedly and consistently held that perfunctory and undeveloped arguments, as well as arguments that are unsupported by pertinent authority, are waived. *United States v. Elst*, 579 F.3d 740, 747 (7th Cir. 2009).

Here, White did not offer any arguments in his opening brief regarding fair notice or the substitution of one predicate conviction for another when determining career offender status. Not only did White fail to cite *Dotson*, but he also failed to discuss its holding allowing such a substitution after a court reviews case-specific considerations. 949 F.3d at 320–22. Even more, this court described these issues and referenced *Dotson* in the certificate of appealability.

White claims in his reply brief that there was no waiver. He argues that his opening brief generally challenged his enhanced status by asserting he had too few predicate convictions, and that intervening case law like *Ruth* provided a "new twist" on this question. But it is not enough "to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *Bank of Am., N.A. v. Veluchamy*, 643 F.3d 185, 190 (7th Cir. 2011) (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)). And arguments raised for the first time in White's reply brief are waived because they leave no chance to respond. *Wonsey v. City of Chicago*, 940 F.3d 394, 398 (7th Cir. 2019); *United States v. Vitrano*, 747 F.3d 922, 925 (7th Cir. 2014).

Even if White had not waived this challenge on the first issue, his argument falls short. White concedes he had formal notice that his 2003 drug delivery qualified as an ACCA predicate. He also acknowledges that this conviction was listed in his presentence investigation report. Yet White asserts that the sentencing court failed to identify or rely on his 2003 conviction at sentencing. So the presentence investigation report's list of three other offenses as ACCA predicates, White contends, "negated, or at least weakened, the impact of [the]

notice" of the 2003 drug delivery conviction. In essence, White claims he had ineffective notice, in contrast to *Dotson*.

The record, however, undercuts this argument. White knew the following about the government's reliance on the 2003 drug delivery as a predicate for the armed career criminal enhancement:

- On February 1, 2013—more than four months before trial—the government provided a formal notice under 18 U.S.C. § 924(e) that it considered the 2003 drug delivery conviction a "serious drug offense" that qualified White as an armed career criminal;

- In the government's version of the offense, filed more than three months before sentencing, the 2003 drug delivery is listed in White's criminal history as a prior drug felony that qualifies him as an armed career criminal under § 924(e);

- The presentence investigation report for White lists the 2003 drug delivery in his criminal history, although it does not describe that offense as a predicate for enhanced status; and

- In response to White's § 2255 petition, the government argued that the 2003 drug delivery qualified as a "serious drug offense" under ACCA.

To support his § 2255 petition, White could have replied that the 2003 drug delivery did not qualify as an ACCA predicate. He failed to do so. Not until this appeal did White contest the 2003 drug delivery as a predicate offense for armed career criminal status. True, during White's sentencing the district court did not rely on the 2003 drug delivery conviction

as an ACCA predicate. But throughout his criminal and civil proceedings, White had abundant notice of, and an opportunity to respond to, the government's position that it was.

We also observe that nothing in the record or in the district court's opinion is inconsistent with recent decisions of this court. Take *Dotson*, for example, which by its own statement was a "narrow and limited" decision. 949 F.3d at 318. There, this court concluded that substituting a conviction as a predicate for armed career criminal status did not offend fair notice principles. *Id.* at 320–22. That was because both the indictment and the presentence investigation report listed the substitute offense, and the defendant had recognized and mistakenly believed the conviction served as an ACCA predicate. *Id.*

Here, as in *Dotson*, the presentence investigation report listed White's 2003 drug delivery conviction. White did not object to that part of the report. To be sure, a pretrial § 924(e) notice is not required. *United States v. Hardy*, 52 F.3d 147, 150 (7th Cir. 1995). But here, the government provided White specific notice more than three months before trial that his 2003 drug delivery qualified as an ACCA predicate. The government made the same point in its version of the offense, three months before sentencing.

White incorrectly contends he did not have a chance to respond to the government's substitution of the 2003 drug delivery conviction as an ACCA predicate. Like in *Dotson*, White could have objected but he failed to do so. The government's response to White's § 2255 petition described the 2003 drug delivery in detail under the heading "**ADDITIONAL DRUG OFFENSE PREDICATE**." In White's reply brief on his petition, he did not challenge the 2003 drug delivery as an ACCA predicate. As in *Dotson*, the "[f]air notice [that] underpins due

process precisely because it prevents surprise and affords opportunities to respond … [is] not offended here." 949 F.3d at 321.

In addition to waiver, White faces another problem: procedural default. A claim not raised on direct appeal generally may not be raised for the first time on collateral review and amounts to procedural default. *McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016). Here, we are reviewing the denial of a § 2255 petition. On direct appeal, White neither challenged his armed career criminal status nor disputed the 2003 drug delivery conviction (although he did object at sentencing to the district court considering the aggravated fleeing conviction). To overcome the procedural default and obtain § 2255 relief, White must show either cause for the default and actual prejudice from the alleged error, or that he is actually innocent (which White does not claim). *Bousley v. United States*, 523 U.S. 614, 622 (1998).

A petitioner does not suffer pervasive or actual prejudice from an allegedly erroneous ACCA enhancement if, despite an error, the government can still demonstrate that he has three qualifying predicate convictions to support the enhancement. *Cf. Grzegorczyk v. United States*, 997 F.3d 743, 748–49 (7th Cir. 2021) (concluding that an argument raised for the first time in a § 2255 petition was defaulted because the petitioner could not demonstrate either cause and actual prejudice or actual innocence). As shown above, White had fair notice of and an opportunity to respond to the substitute predicate during his criminal and civil cases. Recall that White raised his argument based on *Johnson* that he had insufficient predicate offenses for armed career criminal status. The government raised the no-prejudice argument in

response to White's petition—its earliest opportunity to do so. Yet White did not reply to it.

So even if White could show cause, the district court correctly concluded that White cannot show prejudice because he had other previous convictions that qualified as ACCA predicates. In other words, if White has not waived this challenge to the sentencing enhancement, he at least procedurally defaulted the claim.

**B**

White also questions whether after *Ruth*, his 2003 and 2008 drug delivery convictions qualify as ACCA predicates. In *Ruth*, this court held that certain Illinois cocaine offenses are categorically overbroad when compared to the federal definition of "felony drug offense" under 21 U.S.C. § 841(b)(1). *Id.* at 650. As this court noted, Illinois's definition of cocaine includes positional isomers, but the federal definition of cocaine does not. *Id.* at 648. White's 2003 and 2008 drug delivery offenses involved the same definition of cocaine, so he argues the same categorical mismatch in *Ruth* should apply to the definition of "serious drug offense" under 18 U.S.C. § 924(e).

Again, White did not challenge his sentence on direct appeal. At oral argument before us, his counsel admitted that nothing prevented White from arguing on direct appeal the point that later succeeded in *Ruth*. This raises a problem for White because arguments that can be made, must be made in order to be preserved for collateral attack. *See Bousley*, 523 U.S. at 622 (noting that a defendant procedurally defaults a claim that "can be fully and completely addressed on direct review" by failing to raise it on direct review, unless he can demonstrate cause and actual prejudice, or actual innocence). This

court's discussion in *United States v. Nebinger*, 987 F.3d 734 (7th Cir. 2021), is also instructive. There, a defendant convicted as a felon in possession of a firearm failed to object to the use of his prior Illinois drug conviction as an ACCA predicate in the district court. *Id.* at 742. He then failed to raise the claim in his first appeal. *Id.* On a subsequent appeal, the defendant argued that his prior Illinois drug conviction did not qualify as an ACCA predicate on the ground that under *Ruth*, the Illinois statute criminalized a broader category of cocaine isomers than corresponding federal law. *Id.* at 742–43. This court concluded that the defendant forfeited his argument because he could have made the same argument in the district court or in his first appeal but did not do so. *Id.*

Here, the sentencing court relied on White's 2008 cocaine delivery conviction as one of the ACCA predicates. That means White could have advanced the same argument he now presents—that the 2003 cocaine delivery conviction did not qualify as an ACCA predicate—on the 2008 cocaine delivery conviction. So too, White could have challenged the substitution of his 2003 drug delivery conviction for the 2008 drug delivery conviction in the sentencing court. But White failed to do either.

Given these problems with issue preservation, we are confronted with the specter of procedural default, as plain error review does not apply on appeal from the denial of a § 2255 petition. *United States v. Frady*, 456 U.S. 152, 164–65 (1982). White submits that cause and actual prejudice exist here to excuse him from any procedural default. Although a wrongly extended prison term constitutes prejudice, *see Cross v. United States*, 892 F.3d 288, 295 (7th Cir. 2018), White offers a strained argument to show cause for his default.

White contends that federal courts routinely accept Illinois's controlled substance offenses involving cocaine as serious drug offenses, without comparing federal and state drug definitions. This court's decision in *Ruth*, and the opinion on which *Ruth* relies, *Shular v. United States*, 140 S. Ct. 779 (2020), were not yet decided when White's § 2255 petition was resolved in 2017 and his default took place.

A change in the law may constitute cause for procedural default if it creates a claim that "is so novel that its legal basis is not reasonably available to counsel." *Bousley*, 523 U.S. at 622 (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)); *see Cross*, 892 F.3d at 295. *Reed* lists three non-exhaustive examples of circumstances in which an attorney may lack a "reasonable basis" to raise a novel claim: (1) when the Supreme Court explicitly overrules prior precedent; (2) when a decision overturns a "longstanding and widespread practice" not previously addressed by the Court "to which the Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved"; and (3) when a decision disapproves of a previously-sanctioned practice. *Reed*, 468 U.S. at 17 (internal quotation marks omitted). White contends his claim based on *Ruth* is sufficiently novel to constitute cause, apparently as falling within the second or third situations.

This court addressed a similar claim of novelty in *Boyer v. United States*, 55 F.3d 296 (7th Cir. 1995). There, the petitioner argued he should not have been sentenced as a career offender because the U.S. Sentencing Commission exceeded its statutory authority by categorizing drug conspiracy as a predicate offense. *Id.* at 297. Like White, Boyer failed to make this argument at trial and on direct appeal. *Id.* To avoid default, Boyer claimed that before a D.C. Circuit decision adopted a

similar argument in another case, other courts had "accepted without comment" the Guidelines' inclusion of conspiracy as a predicate offense. *Id.* at 298. Until the D.C. Circuit case, Boyer argued, no court had ever addressed the argument he was raising for the first time in a collateral proceeding. *Id*. This court rejected Boyer's argument:

> Boyer's claim falls short of demonstrating the sort of novelty envisioned in *Reed*. There is a qualitative difference between on one hand a theory for which the basis and authority have long been in existence but which has only recently been seized upon, and on the other hand a theory which has been argued thoroughly and rejected in the past but which now has been accepted for the first time. The latter situation clearly provides cause for a procedural default; the former, however, does not.

*Boyer*, 55 F.3d at 299.

The same is true here. The "basis and authority" for *Ruth* were in place since 1990, when the Supreme Court first laid out the categorical approach in *Taylor v. United States*, 495 U.S. 575, 600 (1990), and when the relevant portions of the Illinois and federal drug statutes had taken their current form. The enterprising defendant in *Ruth* only recently seized upon it.

To make *Ruth*'s holding seem more novel and less foreseeable, White tries to frame *Ruth* as the consequence of the Supreme Court's decision in *Shular*, also decided in 2020. In *Ruth*, this court cited *Shular* to explain its interpretation of the "serious drug offense" ACCA predicate. 966 F.3d at 646–47. *Shular* clarified that federal courts should not try to create

*generic* versions of the serious drug offenses listed in ACCA, but instead should look to whether the *conduct* proscribed by the state law "involves" the conduct that falls under the definition of "serious drug offense" in ACCA. 140 S. Ct. at 786–87. The relevant provision defines "serious drug offense" as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (*as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)*), for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. 924(e)(2)(A)(ii) (emphasis added).

The definition of cocaine under the Controlled Substances Act does not include "positional isomers," but the definition under Illinois law does. Yet this would have been a problem under any categorical approach, whether "generic offense" or "conduct-based." So this court could have reached the same outcome in *Ruth* without *Shular*'s "conduct-based" approach.

Further, *Ruth* interprets the relevant statutory texts. Finding mismatches between state law and the definitions of ACCA predicates resulted in challenges to a defendant's armed career criminal status before White's sentencing in 2013. By that time, circuit courts had applied *Taylor*'s categorical approach to the term "serious drug offense," as White attempts to now. *See, e.g.*, *United States v. Tucker*, 703 F.3d 205, 209 (3d Cir. 2012) (applying categorical approach of *Taylor* to determine if prior convictions qualify as serious drug offense); *United States v. Bynum*, 669 F.3d 880, 885 (8th Cir. 2012) (same).

When White was sentenced in 2013, a challenge to his cocaine delivery predicate offenses was neither novel—at least as case law has defined that term—nor foreclosed. White

could have raised that challenge at sentencing or on direct appeal, but he did not. *See Greer v. United States*, 141 S. Ct. 2090, 2099 (2021) (noting that adverse precedent does not excuse a defendant's "fail[ure] to raise a contemporaneous objection"). So he has not established cause for his procedural default.

Alternatively, White could overcome procedural default by showing that he suffered a "fundamental miscarriage of justice"—a high bar that requires a showing of actual innocence. *See Smith v. McKee*, 598 F.3d 374, 387–88 (7th Cir. 2010). But White has waived this argument because he merely devotes a single sentence to it in his opening appellate brief: "[i]n the alternative, [a party in procedural default] may show failure to consider the defaulted claim will result in a fundamental miscarriage of justice." (internal quotation marks omitted). Only in his reply brief does he expand on this point, but even then, he cites inapposite case law about the "miscarriage of justice" requirement for cases under the savings clause, 28 U.S.C. § 2255(e), which allows for possible relief under 28 U.S.C. § 2241 in a narrow set of circumstances not applicable here. *See Guenther v. Marske*, 997 F.3d 735, 737 (7th Cir. 2021). So White is left without an excuse for his procedural default.

White has also waived any challenge to the use of his attempted armed robbery conviction as an ACCA predicate. He raised that issue in his reply brief in the district court on his § 2255 petition, but the district court disagreed. White has failed to raise this argument on appeal. Even if White could clear his procedural default of this challenge, it too fails. This court has held that attempt offenses are not residual-clause offenses, but are treated as violent felonies under 18 U.S.C. § 924(e), as long as the substantive crime is a violent felony.

*Hill v. United States*, 877 F.3d 717, 719 (7th Cir. 2017) ("When a substantive offense would be a violent felony under § 924(e) and similar statutes, an attempt to commit that offense also is a violent felony.").

### III

For these reasons, we AFFIRM the district court's denial of White's 28 U.S.C. § 2255 petition to vacate, set aside, or correct his sentence.