**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1691
_____

UNITED STATES OF AMERICA

v.

JEFFREY A. BENTLEY,
Appellant

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Criminal No. 1-05-cr-00039-001)
District Judge, Maryellen Noreika

_____

Argued: June 29, 2022

Before: JORDAN, PORTER, and PHIPPS,
*Circuit Judges*.

(Filed: September 14, 2022)
_____

Daniel J. Tyrrell **[ARGUED]**
Chiesa Shahinian & Giantomasi
One Boland Drive
West Orange, NJ 07024

*Counsel for Appellant*

Alexander P. Ibrahim **[ARGUED]**
Office of United States Attorney
1313 North Market Street
Hercules Building, Suite 400
Wilmington, DE 19801

*Counsel for Appellee*

_____

OPINION OF THE COURT
_____

PORTER, *Circuit Judge*.

Jeffrey Bentley appeals from the District Court's denial of his post-conviction motion. In a plea agreement, Bentley admitted he had three prior "violent felony" convictions, requiring a sentencing enhancement under the Armed Career Criminal Act ("ACCA"). He was sentenced to twenty-two years in prison. A decade later, in *Johnson v. United States*, the Supreme Court held that one part of ACCA's definition of "violent felony," known as the "residual clause," was unconstitutionally vague. 576 U.S. 591, 597 (2015). Seeking to retroactively benefit from that legal development, Bentley asked the District Court to vacate his sentence and order resentencing. The District Court denied Bentley a do-over. The District

2

Court concluded that even if the prior convictions mentioned in Bentley's plea could no longer be counted as strikes under ACCA, any error would be harmless because of Bentley's long rap sheet of ACCA-qualifying burglaries, documented in an undisputed presentence report. On appeal, Bentley argues that the District Court had to disregard his ACCA-qualifying burglaries because they were not mentioned in his plea agreement. He also quibbles with the District Court's factual findings. We disagree with Bentley's arguments, so we will affirm.

I

A

In 2005, Bentley robbed a liquor store at gunpoint. The police caught him after a car chase, and he confessed to the robbery. Bentley was indicted for being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), Hobbs Act robbery, *id.* § 1951, and using and carrying a firearm during a crime of violence, *id.* § 924(c)(1)(A)(ii).

Count one, the felon-in-possession-of-a-firearm charge, carried a sentence of not more than ten years. 18 U.S.C. § 924(a)(2) (2005).[1] But under ACCA, a person convicted of that crime who has three or more prior convictions "for a violent felony or a serious drug offense, or both," is subject to a

---

[1] Congress recently increased the maximum penalty to 15 years. Bipartisan Safer Communities Act, Pub. L. 117-159, Div. A, Title II, § 12004(c), 136 Stat. 1313, 1329 (2022), *codified at* 18 U.S.C. § 924(a)(8).

mandatory sentence of "not less than fifteen years." *Id.* § 924(e)(1).

Bentley agreed to plead guilty to being a felon in possession of a firearm and using and carrying a firearm during a crime of violence. As part of the plea agreement, Bentley also admitted he was subject to ACCA's sentencing enhancement. The first paragraph of the plea memorandum recited that Bentley "has three previous convictions for a violent felony committed on occasions different from one another," and so is subject to a sentencing enhancement under ACCA. J.A. 28. The fourth paragraph of the memorandum gave a factual basis for Bentley's guilty plea, and included an admission that Bentley "was convicted previously [of] three violent felonies," listing three prior convictions:

> (1)    Reckless Endangering in the First Degree in Kent County (Delaware) Superior Court on or about March 8, 1991;
>
> (2)    Robbery and Use of a Firearm in the Circuit Court of the City of Richmond (Virginia) on or about December 14, 1988; and
>
> (3)    Robbery and Use of a Firearm in the Circuit Court of the County of Henrico (Virginia) on or about February 14, 1989.

J.A. 29–30. The United States agreed to recommend the minimum prison sentence available to Bentley—fifteen years for count one (as required by ACCA) and seven years for count three, using and carrying a firearm during a crime of violence, for a total of twenty-two years' imprisonment. It also agreed to

4

dismiss count two, Hobbs Act robbery. The plea memorandum specified that the District Court was not bound by the sentencing stipulations made by the parties.[2]

B

During the sentencing hearing, the District Court adopted "the facts as represented in the presentence investigation report," without objection. J.A. 37; *see also* Fed. R. Crim. P. 32(i)(3)(A) (sentencing court "may accept any undisputed portion of the presentence report as a finding of fact"). The presentence report ("PSR") referenced Bentley's extensive criminal history and said that Bentley "has previously been convicted of both robbery and burglary" and so was subject to Section 4B1.4 of the Sentencing Guidelines, the section implementing ACCA's sentencing enhancement. PSR ¶ 33. The PSR's criminal-history section listed eighteen prior convictions, including six breaking-and-entering convictions in North Carolina.

During the plea colloquy, the parties agreed that Bentley was subject to ACCA's enhancement without elaboration:

> THE COURT: Is there any objection to an enhancement in the offense level to 33 because the defendant is considered under the circumstances a Career Criminal within the meaning of

---

[2] The plea agreement was thus a non-binding "Type B" plea, not a "Type C" plea binding the court to a particular sentence. *Compare* Fed. R. Crim. P. 11(c)(1)(B), *with* Fed. R. Crim. P. 11(c)(1)(C); *see also United States v. Gillen*, 449 F.3d 898, 902 (8th Cir. 2006) (explaining the difference).

Guidelines Section 4B1.4? Do we agree, counsel?

GOVERNMENT COUNSEL: Agreed.

DEFENSE COUNSEL: Agreed.

J.A. 39. When discussing ACCA's sentencing enhancement with Bentley, the District Court referenced Bentley's prior encounters with the criminal justice systems of "Virginia and North Carolina," but never mentioned Bentley's Delaware reckless endangering conviction. J.A. 54.

The District Court ultimately sentenced Bentley to fifteen years for count one, the minimum mandatory sentence under ACCA, and seven years for count three, to run consecutively, for a total sentence of twenty-two years. Bentley did not appeal his sentence.

C

ACCA's definition of violent felony provides, in full:

(B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—

   (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

6

> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*.

18 U.S.C. § 924(e)(2)(B) (emphasis added). Paragraph (i) of the definition of violent felony is known as the force or elements clause. The first part of paragraph (ii) is known as the enumerated-offenses clause. The italicized part of paragraph (ii) is known as the "residual clause."

"The Supreme Court long struggled with interpreting various 'residual clauses' in federal criminal statutes, such as the definition of 'violent felony' in the Armed Career Criminal Act . . . ." *United States v. Vargas-Soto*, 35 F.4th 979, 984 (5th Cir. 2022). The difficulties began when the Supreme Court held that ACCA requires a "categorical approach." *Taylor v. United States*, 495 U.S. 575, 602 (1990). Under a categorical approach, courts deciding whether a prior conviction counts as a violent felony must ignore the specific conduct of the criminal and ask instead whether the elements of the crime are no broader than ACCA's general terms. *Id.* at 600.

The categorical approach made it difficult to predictably apply ACCA's residual clause, as the clause itself references "conduct." Before *Johnson*, when determining whether prior convictions fell under ACCA's residual clause, courts had to decide "whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another." *James v. United States*, 550 U.S. 192, 208 (2007), *overruled by Johnson*, 576 U.S. 591. But this "ordinary case" analysis proved "nearly impossible to apply

7

consistently." *Chambers v. United States*, 555 U.S. 122, 133–34 (2009) (Alito, J., concurring in the judgment), *abrogated by Johnson*, 576 U.S. 591; *see also Sessions v. Dimaya*, 138 S. Ct. 1204, 1215 (2018) ("How does one go about divining the conduct entailed in a crime's ordinary case? Statistical analyses? Surveys? Experts? Google? Gut instinct?"). Given the difficulty of this enterprise, some Justices began calling on the Court to hold the residual clause void for vagueness. *James*, 550 U.S. at 230 (Scalia, J., dissenting).

The Supreme Court at first resisted, but in *Johnson*, "the skeptics won." *Vargas-Soto*, 35 F.4th at 985. In *Johnson*, the Supreme Court overruled *James* and held "that imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process." 576 U.S. at 606. *Johnson*, however, did "not call into question . . . the remainder of the Act's definition of a violent felony." *Id.*

After *Johnson*, in *Welch v. United States*, the Supreme Court held that *Johnson*'s holding applied in post-conviction cases brought under section 2255 of the Judicial Code. 578 U.S. 120, 135 (2016). A flood of post-conviction motions seeking to vacate ACCA sentences followed.

D

Bentley filed one of those motions. He asked the District Court to vacate his original sentence and order resentencing, claiming that his sentence was unconstitutional after *Johnson*. Focusing on the three prior convictions mentioned in his plea memorandum, Bentley argued that his Delaware conviction for reckless endangering and his two Virginia robbery convictions could no longer be counted as ACCA predicates.

Proceedings on Bentley's motion were stayed pending the resolution of cases involving North Carolina's breaking-and-entering statute, as well as Supreme Court cases addressing the scope of "burglary" under ACCA's enumerated-offenses clause. These decisions were ultimately unfavorable to Bentley's legal position.[3] Wanting to move forward, Bentley requested that the stay be lifted and that the United States respond to his motion.

The United States answered that even though Bentley's reckless endangering conviction could no longer be validly counted as a violent felony after *Johnson*, Bentley had six prior North Carolina convictions for breaking and entering with intent to commit larceny, which would still qualify as generic burglary under ACCA's enumerated-offenses clause. *See* N.C. Gen. Stat. § 14-54(a); *see also United States v. Mungro*, 754 F.3d 267, 272 (4th Cir. 2014) ("We therefore conclude that N.C. Gen. Stat. § 14–54(a), as interpreted by the North Carolina Supreme Court, sweeps no more broadly than the generic elements of burglary."). Bentley did not reply.

The District Court denied Bentley's motion. "Given [Bentley's] apparent concession that [his] prior North Carolina

---

[3] *See Quarles v. United States*, 139 S. Ct. 1872, 1877 (2019) ("burglary" under ACCA includes "remaining-in" burglary even when the criminal intent to commit a burglary is formed after entry); *United States v. Stitt*, 139 S. Ct. 399, 403–04 (2018) ("burglary" under ACCA includes the burglary of a structure or vehicle customarily used for overnight accommodation); *United States v. Beatty*, 702 F. App'x 148, 150 (4th Cir. 2017) (North Carolina breaking-and-entering statute's "building" element tracks ACCA generic burglary).

9

felony convictions are relevant to deciding whether to grant relief," the District Court viewed the relevant issue before it as whether Bentley's six convictions under section 14-54(a) of the North Carolina General Statutes qualified as generic burglary under ACCA's enumerated-offenses clause. J.A. 3. The District Court held that they did.

We granted a certificate of appealability and asked the parties to address "whether the District Court erred by relying on convictions other than those identified in the plea agreement to sustain the ACCA sentence and deny Bentley's § 2255 motion." J.A. 15. This appeal followed.[4]

## II

The District Court had jurisdiction under 18 U.S.C. § 3231 and 28 U.S.C. § 2255(a). We have jurisdiction under 28 U.S.C. §§ 1291 and 2253. We review questions of law de novo. *United States v. Peppers*, 899 F.3d 211, 220 (3d Cir. 2018). We review the District Court's findings of fact for clear error. *United States v. Folk*, 954 F.3d 597, 601 (3d Cir. 2020).

## III

The main issue in this appeal boils down to whether ACCA's residual clause made a difference to Bentley's sentence, and if so, whether the constitutional error was harmless. More narrowly, we must address whether the District Court could consider the breaking-and-entering convictions mentioned in Bentley's PSR as ACCA predicates, even though they

---

[4] Daniel J. Tyrrell of Chiesa Shahinian & Giantomasi represented Bentley on appeal pro bono. He has ably discharged his responsibilities.

10

were not listed in the plea memorandum's factual stipulations. If the answer is yes, we must then consider whether Bentley's North Carolina convictions qualify as violent felonies under ACCA.

A

We begin by explaining the legal framework governing Bentley's claim for relief. To prevail, Bentley must show that his sentence was constitutionally invalid. 28 U.S.C. § 2255(a), (b). In this context, Bentley "has the burden of proving the merits of his *Johnson* claim, . . . which means he bears the burden of demonstrating that his sentence implicated the residual clause of the ACCA." *Peppers*, 899 F.3d at 235. "To prove a *Johnson* claim," Bentley must "demonstrate that his sentence necessarily implicates the residual clause, which may be shown either by evidence that the district court in fact sentenced him under the residual clause or proof that he could not have been sentenced under the elements or enumerated offenses clauses based on current case law, and that that made a difference in his sentence." *Id.* at 235 n.21. He must prove this by a preponderance of the evidence. *Id.* If Bentley proves his *Johnson* claim, we must consider whether the error was harmless. *Peppers*, 899 F.3d at 236.[5] On collateral review, a *Johnson*

---

[5] *See also* Fed. R. Civ. P. 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."); Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."); Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 12 (noting the applicability of the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure).

error requires vacatur only if the error caused "actual prejudice," that is, "had [a] substantial and injurious effect or influence" on the sentence. *Brecht v. Abrahamson*, 507 U.S. 619, 631, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

Bentley asserts that he has proven his *Johnson* claim because the three prior convictions listed in his plea memorandum fit no other part of ACCA's "violent felony" definition, so his sentence necessarily implicated the unconstitutional residual clause. Bentley's argument assumes that the sentencing court relied exclusively on the three prior convictions stipulated in the plea memorandum to sentence Bentley under ACCA.

That assumption is difficult to test here. "A sentencing court is not bound by factual stipulations in a plea agreement and has discretion to make factual findings based on other relevant information." *United States v. Ketcham*, 80 F.3d 789, 792 n.6 (3d Cir. 1996); *see also United States v. Maurer*, 639 F.3d 72, 81 (3d Cir. 2011) (same). The PSR, adopted by the sentencing court without objection, is other relevant information. *See* Fed. R. Crim. P. 32(i)(3)(A); U.S.S.G. § 6A1.1 (commentary) ("A thorough presentence investigation ordinarily is essential in determining the facts relevant to sentencing."). And the PSR said that Bentley was subject to ACCA's enhancement because of his criminal history of robbery and burglary, referencing the breaking-and-entering convictions listed in the PSR. The sentencing record does not clearly indicate whether the court relied on the plea memorandum's stipulations, looked to the PSR's conclusions, or did both. Given this ambiguity, to show that the residual clause made a difference, Bentley would need to establish that none of the ACCA predicates referenced in the plea memorandum or the undis-

12

puted PSR would have allowed the sentencing court to sentence him under ACCA.

Bentley argues, however, that as a matter of law the District Court could not consider the breaking-and-entering convictions on collateral review, raising arguments that sound in waiver and due process. We consider this argument before turning to the merits of Bentley's *Johnson* claim.

## B

Bentley's main argument on appeal is that the District Court erred by considering his breaking-and-entering convictions on collateral review.[6] We first describe Bentley's argument and the relevant and conflicting caselaw that has developed in various circuits. We then explain why we reject Bentley's arguments. Finally, we reject the United States' argument that new ACCA predicates may always be swapped for original predicates on collateral review.

## 1

Bentley contends we should read the plea memorandum as an exclusive list of violent felonies, precluding reliance on

---

[6] Bentley never raised his argument before the District Court, so it is forfeited. Yet we requested briefing on this issue when we granted the certificate of appealability, and the United States never moved to vacate the certificate as improvidently granted. We will affirm on the merits for the sake of judicial economy. *See United States v. Marcello*, 212 F.3d 1005, 1007–08 (7th Cir. 2000) (courts have discretion to disregard an improvidently granted certificate and affirm on the merits for the sake of judicial economy).

13

other ACCA predicates on collateral review. In Bentley's view, due process requires that the District Court wait until resentencing to address whether Bentley's burglary convictions qualify as ACCA predicates, where the prosecution—not Bentley—will bear the initial burden of proof. To support this argument, Bentley relies on the Fourth Circuit's decision in *United States v. Hodge*, 902 F.3d 420 (4th Cir. 2018). Because that decision is central to Bentley's argument, we describe it at some length.

In *Hodge*, the PSR identified three specific prior convictions as ACCA predicates, one of which necessarily relied on the residual clause. *Id.* at 426. On collateral review after *Johnson*, the United States argued that other convictions mentioned in the PSR's criminal-history section, but not designated by the probation officer as violent felonies in the PSR, were also ACCA predicates. The Fourth Circuit refused to consider these other ACCA predicates on collateral review, reasoning that the PSR's "express identification of some convictions as ACCA predicates implies an intentional exclusion of the others." *Id.* at 427. Because the United States never objected to the PSR's "intentional exclusion" of other ACCA predicates, the Fourth Circuit continued, the United States had forfeited reliance on other ACCA predicates during sentencing. *Id.* at 429. Excusing this forfeiture on collateral review would, in the Fourth Circuit's view, deprive the defendant of his right to fair notice and an adequate opportunity to dispute these ACCA predicates during sentencing. *Id.* at 429–30. After all, by keeping these ACCA predicates quiet until they were needed on collateral review, the United States shifted the burden of sentencing proof to the defendant and restricted his appeal rights. *Id.* To avoid that perverse incentive and the resulting procedural unfairness, the Fourth Circuit held "that the Government

14

must identify all convictions it wishes to use to support a defendant's ACCA sentence enhancement at the time of sentencing," at least if it wants to rely on those convictions on collateral review. *Id.* at 430.

*Hodge* is not the only relevant decision on the books. At least two circuits have rejected the Fourth Circuit's requirement that the United States specifically identify all predicates during sentencing. *See Tribue v. United States*, 929 F.3d 1326, 1332 (11th Cir. 2019); *Dotson v. United States*, 949 F.3d 317, 321 (7th Cir. 2020); *White v. United States*, 8 F.4th 547, 553–54 (7th Cir. 2021). At the other extreme is the Eleventh Circuit's decision in *Tribue*. Because it conflicts with *Hodge*, we describe *Tribue* in detail as well.

In *Tribue*, as in *Hodge*, the PSR listed three ACCA predicates, but one of them relied on the residual clause. *Tribue*, 929 F.3d at 1328, 1330. After *Johnson*, the prisoner sought to vacate his sentence. *Id.* at 1330. In response, the United States argued that another crime listed in the PSR's criminal-history section, but not designated as an ACCA predicate, counted as a violent felony. *Id.* Relying on that alternative ACCA predicate, the Eleventh Circuit concluded that the prisoner had not shown that his sentence was invalid. *Id.* at 1331–32.

On appeal, the prisoner argued that the United States had "waived" reliance on that new ACCA predicate by failing to object to the PSR's limited list of three ACCA predicates. The Eleventh Circuit rejected this argument for three reasons. *Id.* at 1332. First, Tribue admitted he had been convicted of that crime by not objecting to the PSR. Second, Tribue raised no objection to the ACCA enhancement during his original sentencing. Third, "there is no requirement that the govern-

15

ment prospectively address whether each and every conviction listed in the criminal history section of a PS[R] is an ACCA predicate in order to guard against potential future changes in the law and avoid later claims that it has waived use of those convictions as qualifying ACCA predicates." *Id.*[7]

The Seventh Circuit, for its part, has adopted a "narrow and limited" approach that rejects the Eleventh Circuit's view but takes a more fact-bound approach to notice than the Fourth Circuit. *Dotson*, 949 F.3d at 318. In *Dotson*, the Seventh Circuit held that on collateral review, the district court could rely on a burglary conviction that was not listed as an ACCA predicate in the PSR for two reasons: first, because it was so listed in the indictment and, "more importantly," because the defendant had mistakenly believed that the sentencing court had relied on that burglary conviction to enhance his sentence. *Id.* at 321. Similarly, in *White v. United States*, the Seventh Circuit held that the district court could rely on a prior drug conviction listed as an ACCA predicate by the United States in a pretrial notice, even though it was not listed as an ACCA predicate in the PSR, and even though the sentencing court did not ultimately rely on it to enhance the defendant's sentence under ACCA. 8 F.4th at 553.

To summarize the conflicting approaches: On collateral review, the Fourth Circuit considers only crimes that were specifically designated by the United States as ACCA predicates during sentencing. The Eleventh Circuit allows the United

---

[7] Two judges dissented from denial of rehearing en banc, relying on the Fourth Circuit's reasoning in *Hodge*. *See Tribue v. United States*, 958 F.3d 1148, 1149 (11th Cir. 2020) (Martin, J., dissenting from the denial of rehearing en banc).

States to swap new predicates on collateral review. The Seventh Circuit takes a more fact-bound approach to notice.

2

We chart a middle course. Like the Seventh Circuit, we disagree with "the broader strokes the Eleventh Circuit painted" in *Tribue*, but we also reject the Fourth Circuit's broad rule. *Dotson*, 949 F.3d at 321. We adopt an approach that aligns more closely with the Seventh Circuit's fact-bound approach: To be considered on collateral review, a prior conviction must have been reasonably on the menu of options as an ACCA predicate during the original criminal case. An ACCA predicate was reasonably on the menu of options if, among other things, it was mentioned as an ACCA predicate in a charging document, a plea memorandum, a pretrial notice, the PSR, sentencing filings, or during the sentencing hearing, and so could have reasonably been considered by the sentencing court. By contrast, a crime listed in the criminal-history section of the PSR but never mentioned as an ACCA predicate during a direct criminal case, as was the case in both *Hodge* and *Tribue*, was not fairly on the menu of ACCA predicates and may not be considered during collateral review.

That is not the situation we face, though. *Hodge* and *Tribue* both involved a single list of ACCA predicates, with no alternatives. This case involves two alternative predicate lists: The plea memorandum list and the PSR list. The facts are thus closer to the situation in *White*, where alternative ACCA predicates had been identified during the direct criminal case.

That difference drives our forfeiture analysis. Bentley did not object to the PSR's reliance on his multiple North Carolina breaking-and-entering convictions as ACCA "bur-

17

glary" predicates, so ordinarily principles of forfeiture would, if anything, cut against him, not for him. *White*, 8 F.4th at 554; *see also United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc) ("By failing to object to the presentence report, Vonner accepted all of the factual allegations contained in it . . ."). As the Fourth Circuit put it in *Hodge*, "[g]enerally, a defendant's failure to challenge the PSR's designation of a particular conviction as an ACCA predicate in a timely manner bars him from raising such a challenge on collateral review." 902 F.3d at 429. That is what happened here. Although the PSR did not specifically enumerate Bentley's violent felonies, it pointed to Bentley's robbery and breaking-and-entering convictions as the basis for the probation officer's conclusion that Bentley was subject to an enhanced sentence under ACCA. PSR ¶ 33. Bentley had a chance to object to the PSR's reliance on his breaking-and-entering convictions, but he did not.

On these facts, Bentley's argument that we should read the plea memorandum as impliedly excluding all his other prior felonies for ACCA purposes carries little persuasive weight. Any exclusivity implied by the plea memorandum's list of ACCA predicates is refuted by the PSR's alternative list. The sentencing court was not bound to follow the facts stipulated by the parties in the plea memorandum, so Bentley had no reasonable assurance that the court would overlook the PSR's alternative list of ACCA predicates. For these reasons, the plea memorandum's list did not preclude the District Court from relying on Bentley's breaking-and-entering convictions on direct review. So, too, on collateral review. And because Bentley never disputed the PSR's conclusions during his sentencing, the United States cannot be faulted for waiting until collateral review to introduce the records of conviction.

For similar reasons, considering Bentley's breaking-and-entering convictions on collateral review does not violate due process. The Due Process Clause, as interpreted by the Supreme Court, guarantees at least those "settled usages and modes of proceeding existing in the common and statute law of England." *Murray v. Hoboken Land & Improvement Co.*, 59 U.S. 272, 277 (1855); *see also Dimaya*, 138 S. Ct. at 1224 (Gorsuch, J., concurring in part and concurring in the judgment) (same); *accord id.* at 1243 (Thomas, J., dissenting). Because sentencing enhancements for recidivist criminals were considered penalties at common law, not separate crimes, due process "does not demand that the mere fact of a prior conviction used as a basis for a sentencing enhancement be pleaded in an indictment and submitted to a jury for proof beyond a reasonable doubt." *United States v. Cheek*, 415 F.3d 349, 351–52 (4th Cir. 2005).[8] For this reason, we have held that "due process does not require the government to provide formal, pretrial notice of its intention to seek a sentence under the ACCA." *United States v. Mack*, 229 F.3d 226, 231 (3d Cir. 2000).

---

[8] *See also United States v. Coleman*, 451 F.3d 154, 159 (3d Cir. 2006) ("[P]rior convictions that increase the statutory maximum for an offense are not elements of the offense and thus may be determined by the District Court by a preponderance of the evidence."); *Almendarez-Torres v. United States*, 523 U.S. 224, 243–44 (1998) (same). *But see id.* at 261 (Scalia, J., dissenting) ("At common law, the fact of prior convictions *had* to be charged in the same indictment charging the underlying crime, and submitted to the jury for determination along with that crime.").

Still, due process requires adequate notice of an ACCA predicate and a reasonable opportunity to dispute its use to enhance a criminal sentence under ACCA. *Id.* at 232. But Bentley was afforded that process during his criminal case. The PSR gave him adequate notice that his breaking-and-entering convictions were on the menu of ACCA predicates before the sentencing court. *See id.* (upholding notice as adequate based in part on the PSR specifying relevant ACCA predicates for sentencing). Bentley had an opportunity to read the PSR and discuss it with his counsel. Fed. R. Crim. P. 32(i)(1)(A). Rule 32(f)(1) also gave him fourteen days to "state in writing any objections" to the PSR. He then had an opportunity to object to the PSR's ACCA conclusions during the sentencing hearing. "He chose not to do so." *Mack*, 229 F.3d at 232. So the sentencing court adopted the PSR's conclusions as fact. Fed. R. Crim. P. 32(i)(3)(A). Bentley, like many others, failed to anticipate the result in *Johnson*, and so did not raise timely objections to the PSR's ACCA conclusions during his original sentencing. But Bentley's lack of foresight, while understandable, does not make his notice inadequate.

Bentley argues that the comparative procedural shortfalls of a section 2255 proceeding, including the prisoner's initial burden of proof and restricted appeal rights, should inform our due process analysis. *See Hodge*, 902 F.3d at 429–30. Due process, however, does not require giving Bentley another fresh chance to attack his sentence on the same procedural terms. The Supreme Court has often applied far less favorable procedures on collateral review, recognizing that post-conviction relief is an extraordinary remedy. *See Brecht*, 507 U.S. at 634–35 (citing examples). In a post-conviction context, it is not obvious that due process would forbid district courts from relying on new ACCA predicates to uphold a prior

20

sentence on collateral review. After all, at common law, res judicata would have barred Bentley's post-conviction challenge entirely. *See Brown v. Davenport*, 142 S. Ct. 1510, 1520–21 (2022); *United States v. Hayman*, 342 U.S. 205, 211, 223–24 (1952) (rejecting a constitutional challenge to the adequacy of section 2255 proceedings and noting that "at common law a judgment of conviction rendered by a court of general criminal jurisdiction was conclusive proof that confinement was legal. Such a judgment prevented issuance of the writ [of habeas corpus] without more."). In any event, Bentley received fair notice of his breaking-and-entering predicates during his direct criminal case. So even if due process requires fair notice of ACCA predicates during sentencing before they may be considered on post-conviction review, that requirement was satisfied here.

To the extent Bentley's argument for more notice is informed by pragmatic fairness concerns, not by constitutional imperative, we reject it too. The Fourth Circuit's prophylactic prior-identification notice requirement "risks producing expansive litigation at sentencing over whether each and every prior felony in a defendant's criminal history constitutes a qualifying ACCA predicate." *Dotson*, 949 F.3d at 322. We thus agree with the Seventh Circuit that so long as defendants had adequate notice that an ACCA predicate was reasonably on the menu of options during the original criminal case, "[j]udicial resources warrant better investment." *Id.* Accordingly, when the United States relies on some ACCA predicates during sentencing, and the PSR relies on others, nothing stops district courts from relying on the predicates mentioned in the PSR on collateral review. A district court only needs to count three ACCA predicate strikes during initial sentencing, and unless notice of an ACCA predicate was absent on direct review, we

21

see no legal basis for compelling preemptive sentencing litigation over ACCA strikes that "may never matter." *Id.*

3

The United States wants us to go further. It asks us to join the Eleventh Circuit in *Tribue* and hold that district courts may freely "substitute" new ACCA predicates on collateral review to show that a *Johnson* error was harmless, so long as the United States generally sought an ACCA enhancement during the original sentencing proceeding. A contrary rule, it argues, would conflict with our precedent and the mandatory nature of ACCA. Not so. Precedent does not allow the United States an opportunity to relitigate a sentence on collateral review by swapping old predicates for new ones. ACCA is mandatory, but it is the sentencing court's job to carry out ACCA's requirements. The job of the district court on collateral review is limited to reviewing the job of the sentencing court.

The United States contends that our decision in *Peppers* greenlights open-ended predicate swapping. In *Peppers*, we concluded that a prisoner was unconstitutionally sentenced under the residual clause because two out of three ACCA predicates (two robberies) relied on by the sentencing court did not otherwise qualify as violent felonies. *Peppers*, 899 F.3d at 233–34. In the remand instructions that concluded our opinion, we noted that the district court would have to "resolve whether that error was harmless." *Id.* at 236 (citing *Brecht*, 50 U.S. at 638). We explained in passing that the district court had "noted that 'the record reflects that Peppers also has a prior drug charge which qualifies as a predicate offense.'" *Id.* And we instructed the district court to "analyze in the first instance

whether [the defendant] has at least two other qualifying convictions rendering any constitutional error harmless." *Id.*[9]

The United States points out that the prior drug charge to which we alluded "had not been discussed or agreed to as a potential ACCA predicate during the original proceeding." Appellee Br. 13. So, it argues, *Peppers* must have held by implication that district courts may swap new ACCA predicates on collateral review, even when they were never mentioned as ACCA predicates during the original criminal case.

We disagree. *Peppers* never decided whether the district court could consider the prior drug conviction on harmless-error review, nor did we address the proper scope of harmless-error review generally. Those questions were for the district court to decide on remand.

If anything, *Peppers* undermines the United States' argument. The harmless-error approach we did endorse—*Brecht*—would conflict with the open-ended predicate-substitution rule suggested by the United States.

---

[9] While *Brecht* arose in the context of federal habeas review of state criminal convictions, other circuits have extended *Brecht*'s standard to section 2255 motions. *See United States v. Smith*, 723 F.3d 510, 517 (4th Cir. 2013) (collecting cases); *see also Golinveaux v. United States*, 915 F.3d 564, 569–70 (8th Cir. 2019) (applying *Brecht* to *Johnson* error raised in section 2255 motion). Consistent with the caselaw, *Peppers* assumed that *Brecht*'s standard governs section 2255 motions. We agree with that assumption and join all other circuits that have considered the issue.

*Brecht* arose in the context of constitutional trial errors, not sentencing errors. In that context, *Brecht* does not allow reviewing courts to entertain new evidence of guilt or deny relief based on the probability of conviction on retrial. *Bennett v. Superintendent Graterford SCI*, 886 F.3d 268, 290 (3d Cir. 2018). *Brecht* instead calls on reviewing courts to determine whether an error substantially affected the *actual* jury's verdict based on the entire trial record.

This limitation, however, has its origins in the need to protect the constitutional role of the jury against encroachment by reviewing courts. *Id.*; *see also Weiler v. United States*, 323 U.S. 606, 611 (1945) ("We are not authorized to look at the printed record, resolve conflicting evidence, and reach the conclusion that the error was harmless because we think the defendant was guilty. That would be to substitute our judgment for that of the jury and, under our system of justice, juries alone have been entrusted with that responsibility."). That constitutional concern has no force here. Sentencing courts must decide whether an ACCA sentencing enhancement applies without the aid of a jury, by a preponderance of the evidence. *United States v. Coleman*, 451 F.3d 154, 159 (3d Cir. 2006). When applying harmless-error review to ACCA sentences, the role of the jury is not at stake, and so collateral review does not demand the same strict institutional separation between the role of the factfinder and the reviewing court.

Still, the functional separation preserved by *Brecht* has some value even here, as sentencing proceedings are better adapted to accurately determining the applicability of a sentencing enhancement in the first instance. And in any event, by endorsing *Brecht*'s harmless-error standard for ACCA sentences in *Peppers*, we endorsed its limitations. Under *Brecht,* a district court's job on collateral review is not to decide whether

Bentley should be resentenced under ACCA. That is what resentencing is for. *Brecht* adapted to this context instead requires reviewing courts to examine whether the residual clause substantially affected the sentencing court's decision. Under that test, if a prior conviction was not adequately raised as an ACCA predicate during a direct criminal case, we may not assume it influenced the sentencing court's decision and made a sentencing error harmless. Put differently, we may not assume that the district court sentenced a convict under ACCA without adequate notice of a dispositive ACCA predicate, in violation of due process.

Because *Brecht* would not allow the United States to swap ACCA predicates on collateral review, neither did our brief concluding instructions in *Peppers*. We therefore reject the United States' predicate-swapping rule as overbroad. The United States, of course, remains free to bring new ACCA predicates to the district court's attention during resentencing. But while district courts must consider those new predicates during resentencing, they may not do so on collateral review under the guise of applying *Brecht*'s harmless-error standard.

C

We next consider whether the District Court erred in holding that the six North Carolina breaking-and-entering convictions listed in the PSR triggered an enhanced sentence under the enumerated-offenses clause of ACCA, which specifically lists "burglary." If they did, then any reliance on the residual clause would have been harmless, and Bentley's motion must fail.

The District Court concluded that the elements of subsection of (a) of North Carolina's general burglary law—

25

breaking and entering with the intent to commit a felony or larceny, N.C. Gen. Stat. § 14-54(a)—are narrower than generic burglary and so the convictions would qualify as violent felonies under ACCA. The Fourth and Ninth Circuits have reached the same conclusion as the District Court. *United States v. Dodge*, 963 F.3d 379, 385 (4th Cir. 2020); *Mutee v. United States*, 920 F.3d 624, 627–28 (9th Cir. 2019).[10]

Bentley does not dispute that legal conclusion, so we have no occasion to decide the issue in this case. Bentley instead mounts a record-based challenge to the District Court's ruling. He argues that "[t]he government failed to satisfy its burden to establish that Mr. Bentley had been convicted under subsection (a)" of the North Carolina law. Appellant Br. 30. As relevant here, the North Carolina law is divided into two main subsections, and subsection (b) is a misdemeanor "wrongful breaking" crime that would not qualify as generic burglary under ACCA. Under the "modified categorical approach," courts may rely on some limited extra-statutory record materials, including judicial records of the convicting court, to determine the specific crime of conviction. *Peppers*, 899 F.3d at 231; *Shepard v. United States*, 544 U.S. 13, 16, 20 (2005). The United States introduced records of the convicting court, but on appeal, Bentley says they were not clear enough for the District Court to conclude that Bentley was convicted under

---

[10] In *Dodge*, the Fourth Circuit noted that its precedent may be wrong, suggesting that the "building" element "may be" overbroad considering recent Supreme Court decisions. *United States v. Dodge*, 963 F.3d 379, 384 (4th Cir. 2020); *see also* N.C. Gen. Stat. § 14-54(c) (defining building to include any "structure designed to house or secure within it any activity or property").

subsection (a) instead of subsection (b). But Bentley never disputed that he was convicted under subsection (a) of the North Carolina burglary statute before the District Court, so he has forfeited his record-based challenge. *Peppers*, 899 F.3d at 235.

Even if we excused his forfeiture, though, Bentley's argument would fail. We review the District Court's finding for clear error. *United States v. Silva*, 944 F.3d 993, 995 (8th Cir. 2019); Fed. R. Civ. P. 52(a)(6). That is "a serious thumb on the scale for" the District Court. *U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 138 S. Ct. 960, 966 (2018). "A finding that is 'plausible' in light of the full record—even if another is equally or more so—must govern." *Cooper v. Harris*, 137 S. Ct. 1455, 1465 (2017).

The District Court's conclusion was plausible considering the record before it. The "Felony Judgment & Commitment" order introduced by the United States plausibly shows that Bentley was convicted of a "Class H" felony, not a misdemeanor, meaning Bentley was convicted under subsection (a). J.A. 93. The "Index to Criminal Action" records similarly show that Bentley was convicted of "BE&L," which the District Court plausibly understood to mean breaking and entering with the intent to commit larceny under subsection (a). J.A. 96–112. While these records are not free from ambiguity, the District Court's conclusion was at least plausible, so it must govern this appeal.

\*　　\*　　\*

Bentley has not shown that his six prior convictions under North Carolina's breaking-and-entering statute do not qualify as "burglary" under ACCA's enumerated-offenses clause. Those prior convictions were mentioned as ACCA

27

predicates in the PSR and so were reasonably before the sentencing court when it decided an enhancement was required. Considering this, any *Johnson* error would be harmless. We will affirm the District Court.

PORTER, J., *concurring*.

Figuring out whether a defendant was originally sentenced under the Armed Career Criminal Act's ("ACCA") residual clause years later, when the defendant never opposed the enhancement during sentencing, requires some imaginative reconstruction. Often, as here, the sentencing record will be silent, and judges will have to apply the categorical approach to several prior convictions that may, or may not have been, the basis for the sentence.

I write separately to note that similar future cases may not require this retroactive analysis. Bentley's *Johnson* claim should have failed for a threshold reason: Like many other convicts raising *Johnson* claims, Bentley failed to argue that ACCA's residual clause was unconstitutional during his direct criminal case, so he forfeited his constitutional claim. "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice' or that he is 'actually innocent.'" *Bousley v. United States,* 523 U.S. 614, 622 (1998) (citations omitted); *see also White v. United States*, 8 F.4th 547, 554 (7th Cir. 2021) (applying procedural default excuse framework to post-*Johnson* claim under ACCA).

Bentley shows neither. At best, Bentley's "cause" is that "the Supreme Court had not yet held that his vagueness claim was a winner." *United States v. Vargas-Soto*, 35 F.4th 979, 993 (5th Cir. 2022). But Bentley's failure to anticipate *Johnson* does not come close to the legal roadblock necessary for excusing a procedural default on collateral review. "Supreme Court precedent holds that a prisoner cannot invoke 'novelty' as cause for a default where he was legally able to make the

1

putatively novel argument." *Id.* at 994. A defendant also cannot rely on a futility exception as cause to excuse a procedural default based on contrary court precedent and stare decisis, at least until the Supreme Court squarely forecloses a legal argument. *See Gatewood v. United State*s, 979 F.3d 391, 397 (6th Cir. 2020). In other words, "a claim foreclosed merely by state or lower court precedent does not" show futility. *Id.*

Applying these legal principles, Bentley shows no cause to excuse his procedural default. Bentley was sentenced in 2005, before the Supreme Court's decision in *James* first rejected a void-for-vagueness argument in a footnote. *James v. United States*, 550 U.S. 192, 210 n.6 (2007). It follows that no Supreme Court precedent blocked Bentley from arguing that the residual clause was void for vagueness. *See Gatewood*, 979 F.3d at 397. Even after *James*, some criminal defendants continued arguing that ACCA's residual clause was void for vagueness, disproving any notion that Bentley was unable to make this argument. *See United States v. Jones*, 689 F.3d 696, 698 (7th Cir. 2012). And the void-for-vagueness argument that prevailed in *Johnson* was not so novel that the tools to make it did not exist before *James*. "Since at least the mid-1920s, the Supreme Court has invalidated vague criminal statutes as a failure of due process of law, based on some combination of insufficient notice and the danger of arbitrary or discriminatory enforcement." Nathan S. Chapman & Michael W. McConnell, *Due Process as Separation of Powers*, 121 Yale L.J. 1672, 1806 (2012). Bentley "therefore had a reasonable basis for raising a vagueness challenge to the residual clause of the three-strikes statute." *Gatewood*, 979 F.3d at 397.

While this threshold procedural-default issue should decide a similar future case, this case is not the proper vehicle to consider the question. The United States never raised the

question of procedural default in this case, and procedural default is an affirmative defense that we may not consider sua sponte in the context of a section 2255 proceeding. *See United States v. Doe*, 810 F.3d 132, 154 (3d Cir. 2015). In a future case that properly raises the issue, however, we should follow the Sixth Circuit in *Gatewood* and hold that, at the very least, a *Johnson* claimant sentenced before *James* lacks sufficient legal cause to excuse a procedural default.